The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. Please be seated. We've consolidated the first three cases for argument today. They are 16-2063, 16-2067, and 16-2072, all titled Delphix Corporation v. Matal. Mr. Hatton, whenever you're ready. May it please the Court, Dave Hatton for Delphix. The PTAB made a fundamental claim construction errors in this case. The first was by equating a file system with a database. From that false premise, the PTAB rewrote the definition of database block to be a unit of data used by a file system. Well, we all agree that the broadest reasonable interpretation is what governs here. So I understand the portion of the spec that you point to that you argue sounds definitional. But otherwise, the references in the specification to the database contain really, really, really broad language, right? Column 4, for example, a database comprises data stored in a computer for use in computer-implemented applications. There are really broad descriptions of the database in the specification, right? So how do you get around that? Sure. I agree, Your Honor. With respect to column 4, it is true that a database comprises data used by a computer system. That's talking about what is inside a database. There's no dispute about that. But the patent goes on and describes, and every claim requires, that the database is accessed by a database server. So the patent is talking about conventional databases as provided by the companies that are identified in column 5, Oracle, Sybase, Microsoft. These are all databases that are structured, organized collections of data that are optimized for searching and retrieval. And they're accessed through a database server, as the patent describes. And in that context, the notion of a database block is a well-known concept. And there's really no dispute about this in the evidence in the record. Treatises like Professor Molina's book, Database Systems, the complete book, describe this idea. The documentation from every database provider referenced in the patent describes a database block or a database page as a known concept. It's the logical unit of data that the database server uses to read and write to the database. And to do that, that has to be defined by the database server. And it has to include metadata that the database server uses to interpret that block of data and put it into the right place in the organized structure. And that's exactly what the 808 patent defines as a database block. So, and there's, you know, Actifio, the petitioner's expert, agreed. He cited the same documentation and said that a SQL server data page from Microsoft is the database block that's described in this patent. And that it includes metadata. And went through the same thing for IBM DB2 and Oracle. And in all cases, there was agreement. Do all databases use metadata or can that function be performed by different methods? There's no indication in any of the database literature or in the patent that there are database blocks that don't include metadata. And if you think about it, that has to be the case. If the database server is reading some unit of data, it has to place in a logical arrangement, like a table in a relational database. It has to know how that data, those bits of user data, relate to that logical structure. And that is what the metadata in the header. Can you point to me somewhere in the patent or the record that says that's the only way that databases can work? Well, I can't point to a negative that says all databases have database blocks. But all database blocks... I'm not asking for a negative, I'm asking for a positive that all databases have metadata. The patent defines a database block as including metadata. The patent describes the use of the metadata at each step in this process. By identifying the database blocks that need to get transferred to the database storage system... Right, I get that, but I thought that the board's opinion suggested, or the record suggested, that databases could operate without metadata. There is no evidence in the record of a database operating without metadata. What the board pointed to for the contention that there could be a database block without metadata was this reference to a Google Big Table data structure. It was provided for the first time in the petitioner's reply. Now, there's nothing in that document that actually says that that is a database. It says it operates like a database. And there's nothing in that document... Are we getting tied up on a specific definition of database? Because, I mean, your claims don't confine them to relational databases. They say database, which seems to be a pretty broad term. That's true, but they all require a database block. But you're now arguing that this Google document is in a database, even though it operates like a database. Which sounds like semantics to me, at least under a BRI. Sure, and that was just one point about the Google document. The bigger point with the Google document is that it doesn't refer to database blocks at all. So you can't define the balance of a database block based on a reference that doesn't even talk about database blocks. So the claim term is database block. The question is, what is the ordinary meaning of that term in light of the specification? And the board relied on two embodiments and said they were distinct. So you've got the file sharing embodiment. Sure. Yeah, let me go to that. The first point on that is the patent makes very clear that the database blocks exist in the source database system from which they are transferred to this database storage system to create the virtual database files. There's nothing in the patent that would suggest that the content of those database blocks changes depending on how they are transferred. There's no reason to say that. The board talks about you could pack them with metadata for the streaming body and then somehow take that out. That is just made up. There's nothing in the patent that says that at all. So what the board points to for the non-streaming embodiment that they claim exists, they point to figure 1 and they point to some language at column 6. This is in the 808 patent, line 11. They say figure 1 illustrates one embodiment of how information may be output from a production... I'm sorry, where are you? I'm sorry. Column 8? Yeah, I'm in column 6, line 11 of the 808 patent, which is describing figure 1. It says figure 1 illustrates one embodiment for how information may be copied from a production database to a database storage system. And then the board puts in ellipses, dot, dot, dot, using file sharing system. But if you look at what the patent actually says, it says and provisioned as virtual databases using a file sharing system. So the board left out the part that actually talks about how the file sharing system is used, which is in provisioning. That is the database servers in these virtual database systems accessing the database storage system. If you look farther in column 6, it confirms that in all cases, and this is farther down at column 6 around line 28, it says the production database system 110 responds by sending information stored in the production database as a stream of data. So the board just misread figure 1 in coming up with this alternative file sharing embodiment. What the board says is the database files can be copied, files to be copied have defined boundaries and known structures. This is referring to what they call the file sharing embodiment. And database blocks stored in the files can be accessed directly, and that seemed to indicate that metadata was unnecessary. Right, but none of that is in the patent. When it says that the patent is describing in all embodiments that the database blocks in the source database are accessed through what it calls the vendor interface module. And the patent explains that the vendor interface module is essentially an add-on to the database server provided by a vendor like Oracle. The example of the patent is Oracle RMAN, which stands for recovery manager. So that is a way to read the database blocks from the production database and output them to some backup source. None of that describes at all that there is not metadata in those blocks or that the blocks are somehow different when they're read through this vendor interface module or through the database server. The other thing that the board kind of relies on, I think this is a column A, and it might be what your honor is referring to. It says another embodiment, and this is a column A to the 808 patent around line 32. It says in another embodiment the vendor interface module may retrieve the necessary database blocks from storage level snapshots of the production database or from production or clones. Now all that is talking about is that the database blocks can come from not the live production database that you're running to run your business, but a copy of it. And this is actually referring to these snapshots or database clones are really what this NetApp priority is about. If you run your production database and use a NetApp storage system for your production database, you can create these snapshots and clones that the NetApp priority talks about at the storage level. But when the vendor interface module reads the database blocks from those copies, those are the same database blocks that would be in the production system. There's nothing to suggest their form is different or that this process operates any differently whether you're reading the live production database or a copy. There's another thing that the board just kind of misquotes that I want to get to, and it might go to Judge Hughes' question about the breadth of databases. So the board kind of goes off repeatedly on this statement that the patent says it applies to every database. And this is what they quote from, is in column five of the 808 patent. And we're in the board opinion. What would you say? Which case number are we talking about for the 808 patent? Yes, Your Honor. I need to get the right of permits. I'm sorry, Your Honor. Which case number? We've got three different case numbers. Which appendix should I be looking at? Go ahead. Is it the 2063? Is that the 808 case? Yeah, let me just find the right number. Yeah, so let's look at the 014 is the one I was looking at, which is the one that was attached to our opening brief, the first one. But going to the point, Your Honor, which is what the PTAB relied on from column five, where they say that the claims cover all databases. If you read it in context, it doesn't really say that at all. What it says is, and this is in the 808 patent column, starting at line 11, it says the term production database is used in particular examples to illustrate a useful application of the technology. However, it can be appreciated that the techniques disclosed can be used for any database, regardless of whether the database is used as a production database. So all this is saying is that the primary example, we talked about the source being the production database, but you can use a non-production database and perform the same operation. This is not a statement that redefines the meaning of database block, which is a term that's actually used in the claims. There was no dispute, going back to the main jiu-jitsu move that the board used, which is redefining a database block to be a file system block. No party, no expert, no document equated a file system with a database in this case. The petitioner pointed to the DB2 or Microsoft SQL Server or Oracle as being the database that could be stored using a NetApp system. The NetApp prior itself, there's this Sanders reference that talks about cloning DB2 databases. That reference distinguishes the DB2 database, IBM database, from the NetApp storage system. It says to create the database, you go to your IBM database server and you type in create database. Equating those two different constructs is something that the PTAB came up with entirely on its own. The whole point of a file system is to hide how data is stored on disk from applications like databases so they don't need to understand it. The experts agree, there is a boundary line there. A database cannot figure out and does not get access to the blocks, the units of data that a file system uses on disk. A file system doesn't get access to the database blocks. It doesn't know anything about the database blocks that are used by the database. That's confirmed by both experts but also the Oracle documentation and the Molina treatise on database systems. Once that technical dispute is clarified and the words of the definition of the 808 patent of database block is applied, there's no way it can be read on these NetApp file system prior art. That's why the PTAB had to redefine databases as file systems. The other thing that the PTAB did here is to discard the definition of virtual database in every patent. It did that so that it can read that term on a file system. The patent has an explicit definition. It talks about decoupling the physical implementation of the files from their logical use by a database server. As Professor Shinoy explained, that is the standard definition of virtualization in computer science. If you have a virtual server, it is decoupling the physical implementation. You're sharing a common piece of hardware through software, but the applications that run on it can't tell the difference. The logical use is the same. That's what this patent is talking about when it's talking about decoupling the implementation of the files from their logical use. It's shown in figure 10 and figure 12. On this database storage system, it creates a collection of these shared database blocks. It is separate from any set that is ever on the production system and arranges them in a new way. It allows these different virtual databases to share them. That is the decoupling of the physical implementation. To the database server, it's looking at the database storage system. The files logically work the same. That's the test for successful virtualization. The thing that is using the virtualized resources can't tell the difference. That's what happens here. Instead, the PTAC came up with its own construction. It talks about mapping files to physical addresses. Mapping a file to a physical address is what all file systems do. Going back 40 years to Unix, they used the same system of inodes and pointers to be able to map a file to a collection of blocks on disk. That is not what virtualizes a database in this path. If you apply the PTAC's concocted construction of that term, it will literally cover any copy of any file. They amended it for the first time in their file-written description, but in a way that doesn't solve the problem. Let me go to the last point on the 808 patent, which is Claim 36. Can I ask a logistical question? This is the issue that is unique to one of the appeals. It is. Everything else is common. Yes, Your Honor. The 808 patent in Claim 36 has these claims that talk about compressing prior to storage. The PTAC's construction, saying that that covers compressing at some point in the past, decompressing, and then storing, just turns the claim on its head. It can't mean that at some point in the history of a piece of data it was at one time compressed, and it is then decompressed and stored in decompressed form. This distinction is actually important. One of the differences between the NetApp prior art, and in particular this SnapMirror technology that is described in the Patterson reference and also in the Edward reference, is that SnapMirror creates a physical exact mirror of the source. It is essentially what the prior art they're talking about, SnapMirror, is. This is what's shown in Figure 19 as prior art in the 808 patent. It is mirroring one source database to a second site. That is all NetApp can do, because NetApp operates at the physical file system level. Every block on disk gets replicated from the first site to the second site in SnapMirror. You can never have a point-in-time copy of your second site that you didn't also save at your first site. What it also means is the physical implementation of those two sets of files has to be identical, block for block identical. If your source database is not compressed, you cannot mirror it storing compressed data on the second site in NetApp. It won't work, because it operates at that physical block level. The difference in the Delphix patent is database blocks are a logical construct. It's a set of data that is understood by the database server. When Delphix copies some of those from the source database to the database store system, they can store them physically any way they want, including compressed, or as the patent also describes, encrypted, or in the case of sensitive data like social security numbers, you can mask those out when you store them on your virtual database system. When you do testing and development, you don't expose that confidential information. That's why the 808 patent can compress data prior to storing it, store it in a compressed form as the claim requires, but you can't do that in NetApp, because you have to have exactly the same bits on disk in the NetApp system on the source as on the mirrored destination, which just kind of shows what the fundamental difference in these technologies is. I see my yellow light is on. I will sit down. Good morning, Your Honors. May it please the Court. I'd like to begin by addressing a few points my friend raised in the past few minutes. And starting with the question from Judge Hughes about whether there's evidence that all databases must use metadata. And to begin with, there's evidence that some databases do not, including flat files, CSV files. But isn't that the ordinary meaning? I mean, outside of this patent, was there an expert that said that wasn't their agreement that that was the plain, ordinary meaning of the language? That it would include metadata? If I understand correctly, there was not agreement that there was an ordinary meaning that database blocks have to contain metadata. Now, what there appears to have been agreement about is that several popular commercial relational databases have database blocks or pages that, at least in some cases, have metadata. Now, there's also evidence that many databases have metadata, but not necessarily in the database blocks. And the Google example, the BigTable, is a great example of that. The Google reference explains that it has, it calls them blocks. It doesn't use the exact term database block, but it has blocks of data, an enormous amount of data. Same database used for the Google indexing when you do Google searches. And it explains that there is metadata that is stored external to those blocks. And that was an example that was cited by Actifio, the petitioner's expert, Dr. Zadig. And that rebuts the idea that all databases necessarily have metadata in the block. We would agree that, generally speaking, with a large database, metadata is going to make it easier to determine where these blocks go. The patent talks about taking blocks from one server to another, virtualizing them. Metadata will certainly help with that. But the question here is, do these claims require the metadata to be stored in the database block? And we would submit that if that was so important, if that's what the patent applicant intended, why does that not appear in the claims? Well, it appears in the specification, as you know from Phillips, and at least when we're not in broad as reasonable interpretation land, we rely on the spec to inform the claims. It seems to me the language that's been talked about in this case in column two is quite specific about metadata being included. I mean, if you were trying to do that, and let's leave aside the claims now, but in the specification, if you were trying to make this kind of a definitional psychopathy thing, how else would you say it other than the way it's included in the specification here? Right? I mean, look at the language in column two. A portion of the database block stores metadata associated with the database block. How could one have made the point that your friend on the other side is trying to claim here better, more clearly, than by saying what it said in the spec? Well, I would be speculating, but one could certainly say that a database block must include metadata, or necessarily includes metadata, and explain why that is so important, or what the consequence would be of excluding the metadata. Well, it says a portion of the database block stores metadata associated. You're saying if it had said the portion of the database block has to store metadata? I mean, I'm not sure how you're saying you could make that clearer. So, our read of that paragraph, of that sentence, is that that is describing what some embodiments can do, as opposed to a definition. If you look earlier in that paragraph, in column two, there's the discussion of production database and source database, and the spec is very clear that those terms are used interchangeably. It's a clear definition, and the parties agreed that when two sentences above, a database block is, and then it goes on to describe a unit of data used by a database. But I don't want to lose sight of the fact that this language that is relied upon so heavily by Delphix, appears in only one of the three patents that are at issue, and yet Delphix has argued that there should be a consistent interpretation across. It does not appear in the claims. It appears only sporadically in the spec, and some of those descriptions in the specification reference metadata stored in other places, such as in a file and not in the block. In addition, the spec consistently describes the metadata as being associated with the block, which the board correctly pointed out, doesn't require it to be in the block. It could certainly be somewhere else and still be associated with the block. You're saying that that statement in column two looks sort of casual rather than definitional? I don't know. It can include metadata. Equivalent to that. If it had said can include metadata, certainly my job would be easier here today. It says includes. Does that mean it's not definitional? So, if you look at that statement in isolation, I would agree that certainly seems probative of database blocks that store metadata. But what the board did and what is appropriate under this court's precedent is looked at the specification as a whole. And the specification as a whole has the examples I just gave, as well as the file sharing embodiment, as well as the streaming. But the file sharing, so the answer is they didn't call out specifically the inclusion of metadata in the file sharing embodiment. That's what the board relies on, right? So they do, but they also dig deeper and they say, would you need to have metadata? Would this embodiment work? Because Delphix had argued this wouldn't work without the metadata. First of all, it could work if the metadata were stored somewhere else. But secondly, the board noted that if you're just moving the file blocks from one place to another, you're not analyzing, you're not interpreting the blocks. And column 13, where counsel referred us to earlier, actually talks about the file sharing example being perfect for situations when the database server does not support appropriate APIs for extracting the necessary information. And then it talks about going on and being able to move the data. And again, it talks about metadata associated with the blocks. And a different portion of the specification that I think is really relevant here, in the 808 patent, if we look at column 31, column 31 has some disclaimers or language to aid one in interpreting the patent. And here the patentee says, in column 31, starting at line 44, structures and functionality presented as a single component may be implemented as separate components. So to the extent that it's not clear whether or not, in all cases, one must include the metadata in the database block, particularly where it's not recited in the claim, the patentee seems to have told us if the patent says you could do it with one unit, you could do it with two units, which should point out is undisputed. The Ant App prior art does have metadata. The Edwards reference, which is the primary reference across these cases, is replete with references to metadata. Granted, it does not explicitly talk about storing metadata in the database blocks. But nonetheless, there is metadata and it is used. So wait a minute, so you've got two opposite arguments here. One is that the claims don't compel the use of metadata in blocks. And then you're saying, but even if it does, the prior art also includes metadata? Are those alternative arguments? Not alternative arguments. The, well, you could call them alternative arguments. To the extent that claims are interpreted to require metadata, I'm just pointing out that the Net App references do use metadata. Now, to the extent the claims require, or this court disagrees with the board and says that the claims require metadata in the database blocks, there is an alternative argument to that as well, which is that some of the prior art did have what Delphix has called incidental metadata. And that is because these references describe using Net App to store databases, mirror databases, virtualize databases, such as Microsoft SQL Server. And Delphix's own expert has explained that the database block sizes can vary in size, and so can the Net App file blocks. And it was argued below by Actifio that you can have even examples where you have an identical block size. I think the examples of four kilobytes where you have the file system block and the database block that's being stored thereon would be the same size, in which case virtually all of the blocks would have metadata. But in any event, there is no dispute that at least in some cases there are some blocks in the prior art that contain metadata. Now, another point that was made earlier was about the database server and how you need to have a database server. And we would certainly agree that the claims do expressly recite database server, but they do it in a different limitation. In 808 Claim 1, it's in the last limitation about mounting the virtual databases on a database server. And there's been no dispute that that claim was taught by the prior art. All of these Net App references talk about copying, virtualizing, mirroring, et cetera. Blocks that include databases which can then be mounted on whether it's Microsoft SQL Server or Oracle or any other program that people may often think of as a database. But when we talk about database, the spec does have a definition that is very broad. It says a database is data stored in a computer for use by computer-implemented applications. And although Delphix has tried to walk away from that, their own expert, Dr. Shenoy, argues that a virtual database is a collection of data that is organized so that it can be easily accessed, managed, or updated, which is exactly what the Net App WAFL file system is. Now, turning to the decoupling argument or the virtual database term, it seems that the heart of Delphix's argument with the board on this point is that the board did not use this term decoupling. And I think Delphix's support would be to look at what is actually meant by decoupling and whether that would have any impact on the obviousness finding. And I'd submit that it would not. The primary reason, in my view, that the board, in my reading of the board's decision, that they rejected that particular language is that it was unclear what decoupling meant. If you look through the specification, there's not a clear explanation of what you mean by decouple. And Delphix has offered some meanings but at the end of the day, if we look at the expert declarations, the evidence of the prior art and also the patent, what is really meant by virtual, which is the term in the claim and possibly by decoupling, is that there's some level of indirection, that you're not dealing with something directly but through a layer of abstraction. And Delphix has already admitted and their expert admitted  Can I just ask you a basic question? We have to agree with the board on both of those sort of claim construction questions, right? For you to prevail? I mean, there are two things we're talking about here. We're talking about database blocks and we're talking about virtual database. Do we have to agree with the board on one to sustain the conclusion? For both of them, I'm sorry, do we have to agree with the board on both? That's my understanding. If you disagreed with one of those, there would be a problem there, right? If you disagree with one or both of them, then you'd have to look to the board for obviousness. Finding would be supported by the evidence under whatever you would find to be the appropriate construction. Why don't we just send it back? I mean, if we come up with a different claim construction, isn't it? Well, I mean, it sounds like you're asking us to do the fact-finding if we come up with a new claim construction. So, certainly it's not this court's role to engage in fact-finding in the first instance. There's a couple of terms here. The metadata in the database blocks, whether that's required. The board did note that there is evidence of metadata being stored in the database blocks. So, there's that. And on the virtual database. So, you're saying that the board had an alternative holding that even if we conclude that metadata is required, it's also found in the prior art? It's also in the prior art? I'm not understanding what you're saying there. I'm not understanding what you're saying. I apologize. I don't have it immediately at my fingertips. But there is, and I'm glad to provide the court with references later if requested, the board did reference. What did you know what prior art they were relying on for that point? Oh, so, it is, it's the NetApp prior art and it's specifically the example of where the NetApp blocks contain blocks from, for example, a Microsoft SQL server. I don't understand that sentence. You'd have to explain it better to me. So, a lot of this is... Because I've understood, you've argued that some of these prior art references, even if they don't contain the metadata in a database block, have it elsewhere. But I think you're now saying that some of this prior art shows the metadata in a database block. You'd have to explain that to me. If that was what you were trying to do, you didn't get there. Sure. So, to try to start with the big picture, Delphix has pointed out that NetApp is a file system, which it is, and it has file blocks in which it organizes the data that is ultimately stored to a physical storage device of some sort. And Delphix has pointed out that you also have blocks that can exist in what we might traditionally think of as a database, something like Microsoft SQL Server, and that those are logically distinct from the blocks that are being used by the file system. And what Actifio, the petitioner, argued below, is that the references, and I think this is undisputed, that references teach that you could use NetApp to store, replicate, mirror, et cetera, databases in these file blocks. And the argument was, and the board noted and agreed, that in that context, you could have NetApp blocks that themselves contain or even be co-extensive with, for example, a Microsoft SQL Server block and the metadata that's in that SQL... Are you saying that a Microsoft SQL block  That is undisputed. Okay. And so your view is NetApp can store those Microsoft blocks in a file server and therefore that's what covers it? Almost, Your Honor. It's that the NetApp file blocks themselves contain the Microsoft SQL Server blocks, for example, which contain the metadata and therefore there would be the metadata contained in the block. But again... Can I go back to what we're talking about Sure. which is where we started and you noted and it's fair observation that you're looking to the claims and so the claims don't explicitly call out metadata. But what about claims 32 and 33 which do? And I understand they're dependent claims but there's nowhere in it seems like they're talking about when they speak to analyzing the metadata of database blocks that seems to be almost another definitional point that's not even in column 2. Right? So claims 32 and 33 in my reading I would disagree that they're definitional. I think they're... But they say identify database blocks and analyzing the metadata of database blocks. So... So why is that not almost definitional or assuming there's metadata? So three points, Your Honor. The first one would be that they may define what's covered or attempted to be covered by claims 32 and 33 but secondly there seems to be an antecedent basis problem because the claims 32 and 33 talk about the metadata but there's no clear antecedent basis in the prior claims or the independent claims from which it depends for that metadata which seems like there's a clarity problem but thirdly... It seems to suggest that inherently the other claims did limit themselves to metadata. That's my point. And if that's the case my third point would be that these claims don't track back directly to for example claim 1 but rather through claim 29 and claim 29 is particularly talking about the stream, the data stream embodiment where there's the file sharing embodiment as well as the data stream. And you can see that the data stream embodiment includes metadata. Yes, we agree that the patent spec describes it that way although the board did interpret the spec to read that there would be possible ways of implementing the stream environment without using metadata but it would agree that the patent spec does talk about the use of metadata in the database blocks so going back to the question of what happens if this court disagrees with the claim constructions we talked about the metadata I want to go back to the virtual database term because the virtual database term if the board were to adopt this decoupling language it seems as though if we look at the evidence that there would be no difference in what that actually means as interpreted by the board already requires a set of readable and writable database files capable of being mapped to physical addresses for stored database blocks associated with another database and this mapping which is using the pointers to point back to where the files are actually stored is what everyone seems to agree is meant by virtualization and specifically talks about the NetApp system the prior art system and he says the NetApp waffle file system described below and relied upon in the petition virtualizes aspects of the storage layer by decoupling storage structures such as volumes and files from the specific implementation of the underlying physical storage media that sounds an awful lot like the construction that's being argued by Delphix similar to the Edwards reference which again is really one of the primary references that was relied upon across the seven cases the seven IPRs the first page and this is appendix 7511 in the 2063 case I apologize 7512, the second page says by implementing a level of indirection between physical storage containers called aggregates you virtualize the allocation of volumes on physical storage allowing multiple independently managed file volumes along with their snapshot copies to share the same storage this virtual database term is not something that was new and I don't believe Delphix has ever claimed to have invented virtualization or virtual databases the claims require a lot more and generally what they seem to require is that you have a source database and you apply that to a new location multiple times reflecting multiple points in time as that database changed and then you set up one or more virtual databases that all share that same copied data but that's not the virtual database the virtual database term viewed in the claim as a whole is just talking about this mapping we have the pointers that allow multiple databases to all reference the same efficiencies given the needs of computing resources, storage, limitations, etc. and it seems that all agree that that is here so the decoupling term in our view is simply an unclear term but to the extent it means what Delphix's experts said it means it seems that that is clearly taught in the art Delphix has also argued that there have to be something incorporated into the definition of virtual database and the board disagreed with that and they explained that the database that's the files themselves that's the data you have a database system and that incorporates a server which is software that operates on that data but that's something different and it's also recited separately in the claims server and that allows the database server to read and write to the files and again there's no dispute that that was met. Can I bring you back to the metadata issue we were talking about? I just want to clarify before your time runs out where we are on that were you saying that even if we were to conclude that the board's construction of data blocks claim construction is the correct one that the board made alternative findings that even under Delphix construction the prior art would read on it? Is that what you were saying? That is correct. And you were going to try to find us where in the board opinion those alternative findings are because I'm not finding it and the board opinion is very wrong. The opinions are thorough yes your honor. And I mean maybe if your friend agrees then we don't have to quibble about this. I apologize for the delay I will attempt to find that for you now. I just think it would be very helpful so we could get that now. I didn't see that either counsel I'm looking at a portion of the board's opinion it says Dr. Zadok explains that at least Oracle and IBM databases also include database blocks without metadata which means that the ordinary meaning of the term database block does not include metadata. Is that supportive of your position? Are those facts found by the board? Those were definitely facts found by the board that I think there's a separate related issue and discussion about whether all databases at the time necessarily had metadata in the database blocks which went to the point about whether there was some common ordinary understood meaning separate and apart from the patent and the board did make factual findings that I think merit deference on appeal that no that's not the case and that's the case not only because of Google but also because of the evidence as shown by Dr. Zadok that there are examples even within for example Microsoft SQL server of database blocks that do not contain metadata. But that's a completely different point than the one That is a different point. I mean you didn't make this alternative argument in your brief that I didn't see anything in the headings that suggested we can affirm on a different basis. So in our brief for example in the 2063 case the green brief on page 47 this is the brief for 2063 64 65 and 69 and on page 47 of that brief we do make the argument we say further Delphix concedes that some of the NetApp database blocks contain some database metadata and that some database metadata is a quote from the blue brief from page 43 and we also quote blue brief 42 through 43 talking about no record evidence shows that the waffle data blocks necessarily include database metadata and in the reply brief Can you give me your page number again? Sorry. Page 47 You say it's sufficient for obvious purposes that some of the NetApp database blocks include some metadata even under their construction does not I'm not saying that you cited to the boards I don't and if I've misstated that then I sincerely apologize I do not have reference here I believe that in at least one of the board decisions that there is reference to that but in any event there is concession from Delphix that it is the case that at least in some circumstances there will be blocks that contain metadata and in the reply brief there is also reference to this on page 24 in the reply brief in the 2063 case talking about the fact that NetApp's file system blocks may incidentally contain some database metadata and then it goes on to make their arguments why they don't think that metadata corresponds with the file blocks Why is the patent office making an appearance here? Why are you here when the petitioner didn't bother to show up and you're not arguing any matter or procedure that the board ought to be especially interested in this is a nuts and bolts argument so why are you here? So we are here as we are statutorily authorized to do to defend the determination of the board Entitled to but not required to Not required to but in the interest of defending what we believe to have been a correct determination by the board regarding the patentability of these three particular patents we are here given the fact that Actifio has set aside and was not participating in the appeal But you don't do it in all cases somebody just decides which cases you should come in for I mean I had an appeal last month on the calendar and it was one sided because the board the petitioner dropped out and the board I guess decided not the PTR decided not to come in and defend it Well I'm aware that we have not intervened in every appeal and as Judge Luria pointed out the statute doesn't require us to intervene in every appeal and that particular decision is certainly above my pay grade Well just for myself I appreciate the fact that we have briefing on both sides here so I mean don't take I'll leave it at that I you've run out of time and I know you had a lot can you just give me two sentences on why that Claim 36 construction is right because it doesn't seem like that it's right to be So on Claim 36 the reason it's right and I admit that on first blush it seems counterintuitive what the board did is say regardless of what the patent owner may have intended to claim here if we're reading the claims it doesn't say storing compressed data blocks it says compressing prior to storing but if I just may make a very brief point and that is that the board before doing that observed that it would have been obvious in any event to combine compression with the other methods and systems disclosed in the net app references and then it went on to cite the sing reference and that example as one example of compression that did meet the literal terms of the claim Thank you. Thank you. Just to respond to Judge Post's question about whether if the PTAB is wrong on either the database block instruction or the virtual database instruction does the court have to overturn the decision and the answer is yes. And there is no alternative finding by the PTAB that these patents would be invalid under either of the constructions proposed by Delphix. But the patent office did suggest in their brief as your friend pointed out on page 4. There is a suggestion in the brief. That's not a reversal, right? If we disagreed with the claim construction we wouldn't reverse necessarily. But if there is an alternative grounds to hold it to affirming we could do it here. I don't believe there is an alternative grounds. The argument that the director is making today on the database block argument that somehow a file system block could happen to have some of the metadata from the database block, that doesn't work. It doesn't work for two reasons. One, what's stored in the file system block is just bits. To be metadata it has to be understood as being something different than data. The point of the file system in the NetApp block it just stores bits. It doesn't know what's metadata, it doesn't know what's data. So it's not metadata when it's existing in the file system. And no one has ever suggested that it is. The other requirement is that even under the database, that fails. The undisputed evidence is that NetApp blocks are not used by databases. They're not exposed to the database. The database doesn't know they exist, doesn't know what structure they have, doesn't know what size they are, doesn't know nothing about them. So they cannot be the required database blocks. On the virtual database construction, the decoupling matters. And it matters because, as I pointed out, NetApp operates at the disk physical layer. It cannot decouple that representation of the file when it uses a snap mirror process. That's also why it can't mirror the data in store in a compressed form. It's just copying block from block from disk to disk. And this notion that it uses pointers and somehow that's the same virtualization that creates a virtual database in the pattern is just wrong. What the director quotes in its brief about the NetApp, this is from their brief at 10, they said the NetApp system uses inodes containing pointers which point to the disk. That is just technically wrong. Inodes pointing to data blocks, and this is in the NetApp references, that is what they copied from Unix that's been around for 40 years. That's how all file systems find data that's stored on disk. It has nothing to do with virtualizing the databases in this way. That's one of the frame constructions proposed by Delphix here. And again, frame 36, I don't want to beat a dead horse, but they can't make an obvious argument because the priority itself would prohibit you from storing the data in compressed form. That snap mirror won't do it. It has to be exactly the data that was on the source. And so that's why the obviousness argument doesn't even hold up. One other point I just want to go back to. Council said that there was evidence in this Google  thing that there were data blocks and there was separate metadata. There's no evidence of any data blocks in the big table. Dr. Zadok, who wrote the document for the first time in his reply, didn't map anything to database blocks or data blocks in that system. And so that's your wrong. And as far as there being other metadata and files, certainly there's metadata and files within the database that describe the file itself, but there is separate metadata in the database blocks as described in the document. And as the court has noted, required by claims 32 and 33 explicitly, talk about the metadata in the block.      Thank you very much. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.                  Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thanks. Thanks. Thanks. Thanks.